JOHN GLENN, PERMANENT TRUSTEE OF
      ANN WATSON,
             VS.
HUGH McNEAL AND JOSEPH D. WORLEY.
                    } MARCH TERM, 1851.

[FRAUDULENT CONVEYANCES, VACATING OF.]

A DEED for the consideration of $404, expressed upon its face, was attacked by the creditors of the grantor as fraudulent as against them, and it was shown as a circumstance exciting suspicion of unfairness, that this consideration was totally inadequate to the value of the property, HELD—— that it was not competent for the grantor to prop up the deed by proof of an indebtedness to the grantee for services rendered as a clerk : such super-added consideration, as far as it goes, destroys the character of the deed, and is inconsistent with the consideration expressed upon its face.

Such evidence, if admitted, would change the character of the deed from a bargain and sale to a covenant to stand seised to the use of the grantee ; but proof of the same kind of consideration, varying only in amount, is admissible.

The grantee in a deed absolute upon its face, and professing to be for a moneyed consideration paid at the time, cannot, when such deed is impeached by the creditors of the grantor, show by parol that it was intended to be and was given as a mortgage to secure an old debt of more than twenty years' standing.

A deed to be good under the statute of Elizabeth, as against creditors, must be made *both* upon a valuable consideration and *bona fide ;* if the intent be to defeat or defraud creditors, it is void, though the consideration may not only be valuable but adequate.

A conveyance to a creditor, executed two days before the grantor applied for the benefit of the insolvent laws, when she had stripped herself of all her property, and her creditors were numerous and pressing, is void under the insolvent system.

[The facts of this case are sufficiently stated in the Chancellor's opinion.]

THE CHANCELLOR :

This case has been submitted upon arguments, in writing, by the solicitors of the parties, and the pleadings and evidence have been read and carefully considered.

The object of the bill is to vacate three conveyances executed by Mrs. Ann Watson to the defendants. The two first are dated respectively on the 11th of July and 22d of August, 1843, to Hugh McNeal, the son of the grantor, and the last on the 20th of March, 1845, to Joseph D. Worley. These deeds are assailed as void, under our insolvent system, and as fraudulent and void at common law, and under the statute of Elizabeth.

With regard to those to the son of the grantor, I am satisfied that they cannot be supported against the claims of creditors. I am aware that the answers assert the *bona fides* of these deeds, but the proof, in my judgment, is quite sufficient to overthrow the answers.

The deed of the 11th of July conveys to the grantee, for the consideration of $404, as therein expressed, a term for years in a house and lot in the city of Baltimore. This property, on the 12th of the preceding month, had been conveyed to the grantor, by Mr. Griffith, for the same consideration; but the grantor, before her conveyance to her son, had put repairs upon it to the amount of $815 84, as proved by Mr. Earickson, the carpenter by whom this work was done.

Assuming, therefore, that the money consideration expressed in the deed was paid, it was totally inadequate to the value of the property, and would excite strong suspicions of unfairness. To obviate this, the defendant has examined the grantor herself, and she proves, that at the time of the sale to her son, the bill of repairs had not come in, and that she was to pay it, without charging it to her son, for his services, as a salesman in the store, for more than two years.

Now, viewing Mrs. Watson as a competent witness, and I am disposed so to regard her, the question arises whether this proof is admissible in support of the deed? I think it is not. It is clear, upon the authority of the case of *Cole* vs. *Albers & Runge*, 1 *Gill*, 412, and all the preceding cases on the subject, that if it had been proposed to prove that the entire consideration of the deed had been services rendered the grantor, and that no money had passed, it would have been inadmissible, because

such evidence, if admitted, would have changed the character of the deed from a bargain and sale to a covenant, to stand seised to the use of the grantee.

But if an entirely different consideration could not be proved, why should it be competent to the party to prop up the deed by proof of a superadded consideration, of a different description from that mentioned in it. As far as it goes, it destroys the character of the deed, and is inconsistent with the consideration expressed upon its face. The proof was received in the case of *Cole* vs. *Albers & Runge,* because it showed, not a different, but the same kind of consideration, varying only in amount. The consideration expressed in the deed in that case, and that offered to be shown by evidence *dehors,* was money. But in this case, when it is shown that the property conveyed, in its improved condition, was worth two-thirds more than the sum mentioned in the deed, as a circumstance of suspicion, an effort is made to sustain it, by proving an indebtedness on the part of the grantor to the grantee, and that this indebtedness formed a part of the consideration upon which it was executed. This, I think, cannot be done.

The plaintiff certainly has offered evidence strongly tending to show that the money consideration was not, and could not have been paid. It is difficult to suppose, in view of the condition and nature of the employment of the grantee, that he could have had by him this amount of money. Mr. Collins does prove that he saw the grantee pay some money, and "thinks it was something between four and five hundred dollars," but he is not positive. But suppose he was, and knew the precise amount paid, would that prove it to have been the money of the grantee? He was then living with his mother, as she says, in the capacity of clerk in her store, and there would have been no difficulty in performing the ceremony of paying and receiving money. Mrs. Watson had, just one month before, taken a deed from her vendor, Mr. Griffith, to herself. She had put extensive and costly improvements upon the property, the improvements amounting to more than double the sum she paid for it, and then, according to the defendant's ver-

sion of the transaction, she sold it to her son for what she gave for it, throwing the improvements in, to make up for what she owed him as a clerk, for services in her store for more than two years.

Some light may be reflected upon the character and motives which led to the deed of July, 1843, by looking into the circumstances attending the execution of that of August 22d following. Having by the first deed conveyed her store to her son, by the second she conveyed to him her entire stock of goods, and all her household and kitchen furniture. That she was then insolvent in fact, without credit, and pressed by those to whom she was indebted, is undeniably true; and she herself declares that she executed it " to keep the goods from being swept away." It further appears, from her own testimony, that she retained the possession of the goods and furniture, and disposed of them at her own pleasure. She says, in answer to the fifth interrogatory in chief, " that the goods and furniture never did go to the benefit of Hugh McNeal." " Some of the furniture is still in the possession of the witness, but is not worth fifty dollars." " Other creditors got the benefit of the goods." And in answer to the ninth cross-interrogatory, she says, " that witness sold him the house, and as to the other deed, witness felt that she was indebted to him, and witness thought him as well entitled to be paid as any one else, and he allowed her to dispose of the goods for the benefit of her creditors at large. She made the deed to keep the goods from being swept away, so that every creditor might get their just share." Now this, to say the least, is a very strange vindication of this last-mentioned deed. It was executed by Mrs. Watson because, as she says, she felt that she was indebted to her son, and she thought he was as well entitled to be paid as any one else ; and yet he allowed her to dispose of the property for the benefit of her creditors at large. " She made it to keep the goods from being swept away, so that every creditor might get their share."

This appears to be a very extraordinary way of taking care of a favored creditor. The two motives assigned by the grantor for making the deed, are utterly irreconcileable. The first was

to secure a favored creditor, and the last to keep the property from being swept away, so that every creditor might get their just share. If the true object was to secure her son, how can it be true that it was the design of the grantor to save the property from those of her creditors who were then pressing, so that each and every creditor should receive his just share? And suspicion of the unfairness of this transaction is deepened by the fact deposed to by Mrs. Watson, that her son, for whose especial security the deed was executed, did not even participate with the other creditors in the advantage of that deed; for she says, in reply to the fifth interrogatory in chief, "that the goods and furniture did not go to the benefit of the said Hugh McNeal. Some of the furniture is there still, in the possession of the witness, but is not worth fifty dollars. Other creditors got the benefit of the goods."

This deed, however, of August, 1843, is obnoxious to other and fatal objections. It professes to have been executed for a moneyed consideration of $8,750, paid at the time by the grantee to the grantor, and is absolute in its terms. Now it is conceded that no such sum was paid, the proof of Mrs. Watson, in answer to the third interrogatory, being, that the consideration of the deed was $2,000, which she owed her son from his father's estate. And in reply to the fourth interrogatory, she says, "that witness was married to the father of said McNeal, and his said father died intestate, and left but one child, who is the said Hugh McNeal." "He died about twenty-nine years ago, and no administration was taken out on his estate. He left personal estate worth at least $2,000, which property witness used."

The deed, then, was not an absolute transfer of the title, as it purports to be, for the sum of $8,750, paid to the grantor in money, at or about the date of its execution, but was, according to the statement of the witness, a mortgage to secure an old debt of $2,000, without any solicitation or demand on the part of the grantee for security.

The counsel, in their arguments, differ in regard to the admissibility of the evidence. It being insisted on the part of

the complainant, that it is not competent to the other side, by parol, under the circumstances of this case, to convert the absolute conveyance into a mortgage, and such, I apprehend, is the true doctrine as applicable to this case.

In *Henderson* vs. *Mayhew, et al.,* 2 *Gill.,* 393, the rule is clearly stated by the Court of Appeals : "Parol evidence" (the Court say) "is inadmissible to change or contradict the terms of a written contract. Strangers to the instrument, when authorized to impeach or contradict it, may offer parol testimony for that purpose, and so a grantor may, in a controversy with the grantee, if he charges the same to have been obtained by fraud or mistake. But parties to a written instrument are not permitted in controversies with strangers, to insist that it does not express what it was intended to express." Now that is precisely what is attempted here. It is the party to the instrument, the grantee, in a controversy with a stranger; that is, in a controversy with the trustee representing the creditors of the grantor, who attempt to show by parol that this absolute conveyance was intended to be, and was given as a mortgage, to secure an old debt of more than twenty years' standing.

My opinion is, that these two conveyances are void as against the creditors of the grantor, under the provisions of the statute of 13 *Elizabeth, ch.* 5. That they cannot be regarded as made upon a valuable consideration and *bona fide,* both of which must concur, for if the intent be to defraud or defeat creditors, the conveyance will fall, though the consideration may not only be valuable, but adequate ; 1 *Story's Eq.,* *sec.* 369. But upon a careful examination of the evidence, and for the reasons which have been in part stated, my opinion is, that the consideration was neither valuable nor *bona fide,* and therefore without inquiry how they may be affected by our insolvent system, they must be vacated, and a decree will be passed appointing a trustee to sell the property, for the purpose, of being administered by the complainant in insolvency.

I am not now prepared to say, however, that the defendant, Hugh McNeal, shall be held to account for the goods and furniture included in the bill of sale, but the decree may contain a direction that the Auditor shall ascertain the value of the

property from the pleadings and proofs now in the cause, and such other proofs as the parties may lay before him, and the question of the accountability of the said defendant to pay such value will be reserved for further order.

With regard to the deed to the defendant, Joseph D. Worley, of the 20th of March, 1845, I am satisfied that it is void under our insolvent system, as having been made "with a view, and under the expectation of taking the benefit of the insolvent laws." This deed, which was only executed *two* days before the grantor did actually apply for the benefit of the insolvent laws, conveyed to Worley all her remaining property, being her interest in her deceased husband's estate, and it is, as I think, impossible to suppose that she did not then contemplate making such application. She had stripped herself by these conveyances of every atom of property she had in the world. Her creditors were numerous and pressing, and, as is asked by the Court of Appeals, in the case of *Dulany* vs. *Hoffman*, 7 *G. & J.*, 177, "what reasonable expectation could she have had of being exempted from liability on account of her debts, and without such exemption, what other means of getting rid of her liabilities was left to her, than an application for the benefit of the insolvent laws?"

There are, moreover, circumstances connected with the alleged consideration for this deed to Worley, which could, perhaps, condemn it, even if not liable to the objection which has been stated. But I deem it sufficient to say, that it appears to me that it comes within the range of the insolvent system, and must be set aside as at variance with its policy.

The counsel for the complainant may prepare a decree vacating the three deeds, and appointing a trustee to make sale of the property contained in them, with a direction that for the proceeds of sale, the trustee in insolvency shall account in the Insolvent Court. The decree may also contain a provision referring the case to the Auditor, for the purpose of stating and reporting an account from the pleadings and proof now in the cause, and such other proof as the parties may lay before him, of the value of the personal property contained in the deed of the 22d of August, 1843, and such other accounts

as may be required, and reserving all questions relating to such accounts for further order.

WALLIS, for Complainant.
MAYER, for Defendants.

[The decree in this case was affirmed by the Court of Appeals. The Appellate Court concurred with the Chancellor in his views and conclusions respecting the second and third deeds, and declared the first fraudulent, upon the ground that the evidence showed that McNeal could not have paid the purchase-money expressed in the deed, and the additional sum for repairs, without deciding as to the competency of Mrs. Watson as a witness, or whether McNeal had a right to offer proof in support of the allegation in regard to his having paid for the repairs by means of his account for services as clerk.]